**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| *versus* : | CRIMINAL NO. 15-138-BAJ-RLB |
| : | |
| WALTER GLENN, : | |
| LARRY WALKER, : | |
| and THOMAS JAMES : | |

**UNITED STATES' POST SUPPRESSION HEARING BRIEF**

**MAY IT PLEASE THE COURT:**

NOW INTO COURT comes the United States of America, by J. Walter Green, United States Attorney for the Middle District of Louisiana, through Jessica M.P. Thornhill, Assistant United States Attorney, who respectfully opposes the defendants' Motions to Suppress.

I. **LAW AND ARGUMENT**

A. **Defendants Glenn and James Do Not have Standing to Challenge the Search**

As a threshold matter, defendants Glenn and James do not have standing to challenge the search of defendant Walker's rental vehicle. See United States v. Grant, 349 F.3d 192, 196 (5th Cir. 2003) (holding that those without a privacy interest in the vehicle do not have standing to challenge the search of the vehicle); See also United States v. Boruff, 909 F.2d 111, 117 (5th Cir. 1990). It is the defendants' burden to establish they have standing to challenge the search of the vehicle. Boruff, 909 F.2d at 116. No evidence was presented by counsel for either defendant that they had a privacy interest in the vehicle. Cf. U.S. Exh. 3 (listing defendant Walker as the only authorized driver of the rental vehicle). Therefore, defendants Glenn and James, do not have standing as to the search.

B.      **The Traffic Stop Was Legally Justified**

Traffic stops are evaluated by determining: (1) whether the officer's action was "justified at its inception," and (2) whether the officer's subsequent actions were "reasonably related in scope to the circumstances that justified the stop in the first place." United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005).

On the night in question, Sgt. Dawsey could not read the license plate of the defendants' vehicle as it passed his location.  (Tr. 17:12-14).  Louisiana law requires that all vehicles operating on Louisiana highways must display a license plate "in a place to be clearly visible, and shall be maintained free from foreign material in a condition to be clearly legible." La. R.S. 32:53(a)(1) and (a)(3).  Further, the Louisiana Administrative Code states that a license plate "must be clean, clearly visible and readable for a distance of 50 feet to the rear of the vehicle. Plates shall not be obscured or damaged so that the number cannot be identified." 55 § 811(B)(6)(b).  Being unable to read the license plate of a vehicle in Louisiana creates an objectively reasonable suspicion that a traffic violation has occurred.  See Lopez-Moreno, 420 F.3d at 430 (discussing that a stop is justified in its inception if an officer has an objectively reasonable suspicion that illegal activity, such as a traffic violation occurred).

Sgt. Dawsey had a reasonable suspicion that the defendant's vehicle had committed a traffic violation, when it drove by his location and Sgt. Dawsey could not see what plate was on the vehicle.   Therefore, the traffic stop was justified at its inception.

Even if Sgt. Dawsey was eventually able to read the license plate when he pulled over the defendants' vehicle, it does not change the fact that the black tinted license plate cover initially obscured his view of the license plate.  See United States v. Bates, No. CRIM.A. 12-118, 2013 WL 796064, at *5 (E.D. La. Mar. 4, 2013) (unpublished)(holding that an officer who initially

2

could not read a license plate, due to an obstruction when it passed his location had a reasonable suspicion that a traffic violation had occurred even though he later was able to read it).

Sgt. Dawsey conducted the traffic stop and asked questions related to the stop and travel as well those that logically flowed from the answers he received. This dialog as well as other factors observed by Sgt. Dawsey created a reasonable suspicion in his mind that additional criminal activity was afoot beyond the traffic violation. An officer may extend the duration of the stop beyond the time to complete the traffic stop if he develops reasonable suspicion of additional criminal activity in the meantime. United States v. Pack, 612 F.3d 341, 350 (5th Cir. 2010) (modified on other grounds, 622 F.3d 383 (5th Cir. 2010)). By the time Sgt. Dawsey returned to his vehicle to call for backup he had observed the following facts that supported his reasonable suspicion:

1. Conflicting stories about where defendant Walker was from (Tr. 146:8-9);
2. Conflicting stories about how defendant Walker got to Connecticut (Tr. 146:10-12);
3. Mispronunciation of Beaumont by defendants Glenn and Walker, where they were supposedly visiting family (Tr. 24:18-21, 32:3-4);
4. Their circuitous travel itinerary for a Labor Day family barbeque (Tr. 28:12-14);
5. Defendant Glenn's nervous behavior (Tr. 146:18-19);
6. Defendant Glenn's willingness to remove the license plate cover (Tr. 24:14-17);
7. The screwdriver in the console of the vehicle (Tr. 24:6-7);
8. The vehicle was a rental (U.S. Exh. 3);
9. The rental vehicle had a license plate cover (Tr. 17:12-14);
10. The vehicle was traveling on I-10; and
11. The interior of the vehicle was a mess (Tr. 32:17-19).

Viewing all of these articulable facts together through the lens of Sgt. Dawsey's specialized training and his years of experience, shows he had reasonable suspicion that additional criminal activity was afoot. United States v. Arvizu, 534 U.S. 266, 273 (2002). Sgt. Dawsey testified as

to why these facts increased his suspicion that night.  Tr. 27:14-23, 28:1-22; 32:18-25 and 34:17-18. With that information, while alone on the side of the highway with three occupants, Sgt. Dawsey called for backup.

The Court has held that the government's legitimate and weighty interest in officer safety outweighs a *de minimis* additional intrusion on those already stopped.  Arizona v. Johnson, 555 U.S. 323, 331 (2009). "Traffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." United States v. Rodriguez, 135 S. Ct. 1609, 1616 (2015) (internal citation omitted).  Calling for back up to continue with the investigation, where Sgt. Dawsey was outnumbered 3-1, was necessary to ensure his safety that night.  Sgt. Dawsey testified that he called for backup because "I-10 is a long stretch of nothing.  It's a lot better to have my other two guys behind my unit … especially when there's three gentlemen in the car." Tr. 38:8-16.  Here, within five minutes back up arrived to assist Sgt. Dawsey, such a wait is a *de minimis* additional intrusion that is outweighed by the significant interest in officer safety.

Once backup arrived, Sgt. Dawsey briefly asked a few more questions of defendant Glenn, which further confirmed his suspicion, as defendant Glenn provided new and conflicting information about their travel plans.  It was at this point where Sgt. Dawsey sought consent to search the vehicle.

    **C.**    **The Consent to Search Was Valid**

A consensually prolonged encounter does not amount to a prolonged detention.  Brigham, 382 F.3d at 508.  Sgt. Dawsey obtained consent to search the vehicle from defendant Glenn and Defendant Walker. Tr. 40:10, 42:7-16.  Once consent was given by Defendant Walker, the encounter shifted to a consensual prolonged encounter.

4

Despite defendant Walker's assertions to the contrary, consent to search does not have to come from a specific question and answer scenario. United States v. Guerroro, 472 F.3d 784, 789 (10th Cir. 2007) (discussing that consent can be given through gestures or other indications of acquiescence, if they are adequately clear to a reasonable officer). Here, defendant Walker blurted out his consent before Sgt. Dawsey could even ask the question. Tr. 148:13-20. Sgt. Dawsey testified that "he [Walker] cut me [Dawsey] off to go ahead and answer that I could search it." Tr. 119: 4-5.

It is the United States' burden to establish by a preponderance of the evidence that defendant Walker's consent was voluntarily given.[1]  United States v. Jenkins, 46 F.3d 447, 451 (5th Cir. 1995). In evaluating the voluntariness of consent, courts have traditionally considered six factors to assess the totality of the circumstances: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. United States v. Estrada, 459 F.3d 627, 633-34 (5th Cir. 2006). All six factors are relevant, but no single one is controlling. Id. at 634.

Defendant Walker was not in custody when he consented to the search of his rental car, which supports that his consent was given voluntarily. When Sgt. Dawsey spoke to defendant Walker to obtain consent to search his rental car, defendant Walker was not under arrest, handcuffed or confined in anyway. U.S. Exh. 1, 15:10-16:07; Tr. 42:17-19. Sgt. Dawsey testified that Walker was cooperative throughout their interaction and never objected to or revoked his consent. Tr. 42:20-22; 43:22-23. In addition to voluntariness of the custodial status, the complete absence of coercive police tactics weighs in favors of Walker voluntarily consenting to

---

[1] The second prong of the Jenkins analysis is not in dispute here.

the search. See U.S. Exh. 1 (showing the tone and approach of Sgt. Dawsey was conversational, with no threatening words or actions toward the defendants).

Defendant Walker's cooperative behavior with Sgt. Dawsey also supports that he voluntarily consented to the search. During the first interaction between defendant Walker and Sgt. Dawsey, defendant Walker provided the rental agreement, answered Sgt. Dawsey's questions in detailed responses and appeared calm. U.S. Exh. 1, 3:45-6:20; Tr. 33:1-2. Further, defendant Walker did not even wait for Sgt. Dawsey to ask for consent to search his rental car, he blurted out his consent. U.S. Exh. 1 at 15:24-15:27; Tr. 148:10-17. Additionally, defendant Walker's actions immediately following his consent support the voluntary nature of the assertion. Defendant Walker complied with police directions, allowed the police to search his person, and answered their questions. U.S. Exh. 1 at 15:29-16:10. Nothing about his body language or demeanor indicates he was not fully cooperating with police. Id.

Although defendant Walker was not expressly told he had the right to refuse consent to search his rental vehicle, his personal experience within the criminal justice system shows he was aware of his right to refuse consent. See U.S. Exh. 8, (specifically details defendant Walker's criminal history, which spans approximately fifteen years). A defendant's prior familiarity with the justice system shows he was aware of consequences of giving consent to search. United States v. Santiago, 410 F.3d 193, 203 (5th Cir. 2005).

Defendant Walker's level of education and intelligence show he voluntarily gave consent. He graduated from high school and attended college. U.S. Exh. 7. Defendant Walker is a self-employed small business owner who conducts real estate transactions. U.S. Exhs. 7, 6A and 6B. Further, Sgt. Dawsey testified the "he [Walker] spoke well and our conversation as well. So

6

I had no doubt that he was understanding what I was saying." Tr. 153:17-20.   His education and intelligence show he understood and voluntarily gave consent to search his rental vehicle.

In evaluating the totality of the circumstances, looking at all of these factors, it is clear that defendant Walker voluntarily gave his consent to search the rental vehicle.

## II.   CONCLUSION

For the foregoing reasons, the defendants' motions to suppress should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA, by

J. WALTER GREEN
UNITED STATES ATTORNEY


/s/ Jessica M.P. Thornhill
Jessica M.P. Thornhill, LSBN 34118
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
E-mail: Jessica.thornhill@usdoj.gov

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| *versus* | : | CRIMINAL NO. 15-138-BAJ-RLB |
| | : | |
| WALTER GLENN, | : | |
| LARRY WALKER, | : | |
| and THOMAS JAMES | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the United States' Combined Post Suppression Hearing Brief was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to defendants' counsels of record, by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, on this 22nd day of July, 2016.

/s/ Jessica M.P. Thornhill
JESSICA M.P. THORNHILL
ASSISTANT UNITED STATES ATTORNEY